Good morning. Good morning, Your Honors. How are you holding up? I'm doing all right. You've been doing all the work. It's a pleasure to be here, Your Honor. May it please the Court, William Cole on behalf of the defendants and appellants, Monterey Financial Services. Your Honor, Your Honors, I'd like to make three points as to why the district court erred in this case and why Monterey requests that the Court reverse the order of man in this case to state court. This case should stay in federal court. This is not a local controversy. This is an expressly interstate controversy. And for the following three reasons, we believe the district court erred. First, Your Honor, the district court did not address in its order Monterey's argument as to the class definition. Monterey was not given the opportunity to define this class. That was a choice made by the plaintiff. The plaintiff put the class definition in the complaint. And we know from this court's precedent in Broadway Grill that the class definition in the complaint matters very much in the capital context. And it cannot be changed after removal. And in this case, the class definition did not refer simply to residents of California or Washington, but rather is set forth in Excerpt of Record, page 65, the class definition was all persons who, while physically located in California or Washington or residing, made or received a phone call with Monterey. So it's the wrong math, essentially. Pardon? The wrong math. Yes, because to talk about two-thirds, you have to first know what the whole is. What is the whole? And the response of the plaintiff in the district court and also in this court has been to point the finger at Monterey and suggest that it's our job, it's Monterey's job, to define the whole and to explain who the others are who are physically located, who the other class members are, and to point them out and to identify them. Well, when they posed interrogatory to you, what did they ask? Did they ask, did they quote this language? When they posed interrogatories. I couldn't find it, and I spent a lot of time looking through the papers. Right. No, no, I don't believe they asked for an interrogatory asking for all persons physically located. If they did, Your Honor, I can tell you what we replied. I know what our response was to the interrogatories, and that was we explained what the interrogatories were providing, and that is on, I can get that citation for you. You had a discussion, shall we say, a disagreement about what was and was not going to be done, right? Absolutely. And then we have the district court's order, right? Yes, absolutely. And what did the district court order you to do? No, it was the magistrate judge, Your Honor. All right. Often we call for. . . Understood. Okay. I'm sorry, Your Honor. Fine. The district court, what happened, Your Honor, was we provided a list of everyone in Monterey's records with a time period request for an interrogatory who had an address, a last known address, listed in either California or Washington, who had made a call during the relevant time period of the request. In other words, from your perspective, you provided the information that you had that conformed to the definition of the class. Yes. Okay. Did the district court order you to respond to this interrogatory, the interrogatory that has the language in it which is broader than the language of the class that you produced? No. That's what I'm asking. No. No. It was very clear what happened in the district court. There were two conferences with the court on this matter. It was very clear what we were going to provide. And the plaintiff, frankly, was very clear that he was satisfied with what we were going to provide and didn't seek any further review of that order. And, of course, there would be no way for Monterey to provide the other list. There's never been any explanation by the plaintiff as to how Monterey would know whose class members are who were simply physically located in California during a cell phone call with Monterey. And the plaintiff has never suggested that Monterey has records that record that, that it would know. In fact, it may be that no one will know who those people are unless a class is certified and notice is given. And then people can respond with notice. But this is not a problem of Monterey's creation. This was a problem of the creation of the class definition. And that's why Monterey cited, it's a district court opinion. I don't suggest at all that it's binding on this court in any way. But the case cited in our papers of Amos v. Johnson Control, I would suggest, is very insightful because it dealt with, the district court in that case dealt with almost an identical situation, so identical that it even involved the plaintiff using transunion TLO records. And in that case what the plaintiff had done was to do it as a case involving contamination of certain properties. And the plaintiff defined the class, the plaintiff chose a class definition that was not just residents of those properties or even owners, but occupants, people who had occupied the properties. And the district court said, you know, plaintiff, you may have created an impossible situation for yourself for a Catholic exception. Because how are you going to show me who all the occupants were? Because they're not the people who would be associated in the public record with those properties. Which case is that again, please? That's Amos v. Johnson Control. And I would submit the same thing. People who simply were physically located in California or Washington during a phone call are not the people who would be associated necessarily with California or Washington addresses in Monterey's records. Okay, I have this order after telephonic discovery conferences. One, on or before November 8, 2016, defendants shall produce to plaintiff a list of putative California and Washington class members that includes putative class members, complete names, full telephone numbers, and complete addresses. It doesn't say anything. That's what it says. And so you agreed to do that after this telephonic conversation, right? Yes, Your Honor, but that was a shorthand for the conversation that preceded it. Well, because, Your Honor, I don't— Well, where is that conversation in the record that this is shorthand for? I believe that the transcripts are in the appellee's excerpts of records, the transcripts of both of the meetings with the court. In that transcript, you have said to them, look, we don't have these records of people that might have been in California. Actually, I believe that counsel did. I was not there, but I believe from my recollection in the transcript, as counsel said, that he believed he's created a problem for himself because it's not even known who these people are. And if you think about it— But you have the—so I guess now I'm confused. There's the universe of individuals who made phone calls, period, regardless of whether they're citizens of California and Washington or whether they're not, right? So that's the bigger universe. And then the list that you produced is individuals within that big universe who basically are associated with a California or Washington address. That's the list that was produced. So setting aside whether being associated with a mailing address is sufficient for purposes of demonstrating citizenship, did they conduct discovery to try to seek information on what that whole list, the bigger universe, that would include the subset of individuals who have a mailing address associated with California and Washington? In other words— So there's a big universe. Yes, everyone who ever had a call at all. Everyone who ever called Monterey, and then within that subset are individuals who made phone calls that are associated with California or Washington such that we can determine citizenship, right? Because my understanding of the proposed class definition is the bigger universe that includes people who are citizens of California and Washington, however that's defined, and people who may be passing through. They're located in California and Washington where they make the phone call. So long as we know what that bigger universe is, we can then determine what the subsets are. I suppose that's a—and, Your Honor, I would submit that's a universe between the largest universe and the one that's in California or Washington. The largest universe, which is all that Monterey would have in between, is every call it's ever made with anyone, no matter whether they pass through Washington or California. There's that large universe. True, true. I don't recall— That's even a bigger universe than under my definition. But how about the universe that they've proposed as their class definition, which is individuals who made a call while located in Washington or California, regardless of whether they're citizens or not. Was there discovery to figure out what that universe is? Because then you can subtract the subgroup of California and Washington, and then I'm not— This is why we all went to law school. We don't have that facility, but I think through subtraction you can probably figure out who's in what subgroup. Yes, Your Honor, and I want to make clear this is not a— I do not want to suggest in any way there's a hide-the-ball process going on here. The ball—the ball, which is who was physically located in California or Washington during a phone call, like a cell phone call. That wouldn't be something that discovery could be conducted on against Monterey. I mean, there's no— Plaintiff has never articulated how Monterey would have in its records a list of everybody who has an address in Monterey's records of residing in Washington or California or New York or Florida or wherever, how Monterey would know where everybody was when they happened to make a phone call or receive a phone call in light of our cell phone world. And so that universe, our argument is that universe is, if plaintiff thought that it needed that discovery, if plaintiff thought that it was entitled to more discovery from Monterey, it should have pressed that. It did not. It didn't appeal any discovery orders to the district court, from the magistrate to the district judge. It didn't appeal any discovery orders from the district court to this court. It simply accepted, ultimately, what was provided by Monterey and has then said, well, Monterey hasn't pointed out who else was physically located. Monterey hasn't pointed out who else might have been a member of the class. And my point is simply, that's not our burden. So what happens if they amend their complaint? Pardon? What happens if they amend their complaint to get this lesser class? Well, under this court's precedent in Broadway Grille, they can't do that. This court decided in Broadway Grille v. Visa, I believe is the name of the case, decided in our brief, decided within the last year, that it agreed with virtually every other circuit, I think every other circuit that's addressed the issue, that you cannot change the class definition by amendment to avoid capital jurisdiction. That while you can make certain changes that don't go to the definition of the class, such as you can amend the complaint to clarify the nature of the relief you're seeking, for example, or to clarify, perhaps, how significant a defendant was, the relief you're seeking against a particular defendant, that you cannot redefine the class. You're stuck with the definition of the class at the time of removal, and that was decided in Broadway Grille v. Visa. So it's your position that the plaintiffs defined the class, they, in effect, were hoisted upon their own petard. If they didn't like what they got out of the discovery that you produced, it was their burden, just like it was their burden to show their qualification for the home state exemption, or the local exemption, it was their burden to appeal any order, any discovery order, or to launch a discovery order to get more, in the hope that they could fill out the definition of the class. Is that right? Yes, and I want to make on that point, absolutely, and I want to make on that point that when we were in front of the court, and again, I'm going to refer to the magistrate in this case, only because the magistrate was referring to the district court. When we were in front of the magistrate judge, he indicated when there was a discovery dispute, he said, look, you guys might need more time from the district court. I don't know that I have time. If there's going to be further discovery issues, I don't know that I have time to resolve them in the window that the district court provided. You may need to go see the district judge. And plaintiff took the position, no, we don't need more time. All we need are these addresses. We don't need more time. And so if there was more time needed, if there was some abuse of the discovery, or some violation of the court order, that should have been pressed, and it wasn't. And we're here now with the record we have, and we don't think that's sufficient. I want to turn just for a moment, if I can, to a couple other points as I'm running out of time. The issue of class of U.S. citizenship. This is particularly important in this case because the percentages, once you realize we weren't even dealing with the whole class to begin with, and now you look at a class that is expressly interstate, and then you look at the analysis done by the plaintiff and their statistician, it isn't merely hypothetical or theoretical that U.S. citizenship could play a huge role here, especially since we're dealing with western states that have a substantial portion of non-U.S. citizens living there. And I just want to point out that what the statistician did for the plaintiff was really disingenuous. I don't mean intentionally so, but it had its effect logically to be disingenuous because when we pointed out the issue, that there was no evidence of what percentage of the class were even U.S. citizens, the way that the statistician responded was, well, I will deduct out an estimate of U.S. citizens from both the Washington group and the California group, and then I'll re-compare the remainder. That made no sense because once you're in the Washington group, it doesn't matter if you're a U.S. citizen because you're not a California citizen. What he needed to do was simply deduct out the amount of California citizens who may not be U.S. citizens. He didn't do that. Finally, I just want to point out, I guess what originally perhaps I thought would be the biggest issue was how do you use these residential addresses. And when you finally get to that point, Your Honors, I just want to point out that every circuit except the 6th, every circuit except the 6th has said that you cannot use a mailing address, a last known address, or a telephone number as a surrogate for state citizenship for diversity jurisdiction or for CAFA jurisdiction or for the exceptions to CAFA jurisdiction. And the 6th Circuit, since it came out and went the other way, the 8th Circuit has since, in Hargett, which is cited in our brief, the 8th Circuit has rejected what the 6th Circuit did. And so I'm out of time. I'll save, I guess, 30 seconds if I can for a moment. Okay. Thank you. Good morning, Counsel. Good morning, Your Honors. Welcome. May it please the Court, my name is Patrick Keegan and I'm representing the plaintiff appellee, Ms. Brinkley. I noticed that Your Honors were focused in on the discovery, which I did put into the record, and I did want to provide some guidance to the Court about that, in particular to Your Honors' question about whether or not I asked for the, you know, list of the Californians. And you can find that in the record. And I propounded interrogatories on both defendants at ER 300 to 309 and 341 to 350. The defendant's responses to one of the sets that I was able to scribble down is found at ER 463 to 478. And I did propound requests for documents, interrogatories, requests for admissions, notice depositions, all using the definition of California, identically as alleged in the complaint, all persons residing and physically located. So it's your representation to us that there's been no modification of that definition that's in the complaint, right? Correct. Actually, that helps you. But for the exact reason why my opponent articulated is because there is some case law in the Southern District of California that I could amend the complaint to verify it because, as the Court may know, the reason why we got here is I'm pleading the language that provides in the Penal Code section of the California Penal Code 630XZ, which is language that applies to persons located in California or residing. And so that's why he's here. Let me ask you this, counsel. Putting aside for a moment whether you can amend the definition of the class, I gather that you agree that under CAFA that your client bears the burden to meet the two-thirds requirement, right? Correct. Okay. So under the circumstances, you have to show with whatever definition you come up with, and I gather you agree that's also your burden. You define the class. Correct. And it wasn't corrected by a court, so this is your definition. If you fail to do that for any reason other than skullduggery on the part of the defendant, that's your problem, right? Correct. But I would note in this case, as your Honor, as Judge Winn was pointing out, the question is, is the universe of the definition. Defendant is focusing on where the parties are, but what I'm asking for in the definition is persons that were recorded. The defendant knows who they recorded. In requests for docs, I ask them, give me every recording that you had. Now, if they took the position, we don't know who they are. He could have gave the defendant in response to the court's magistrate judge's order, which is ER 888 through 889, which specifically says, produce the list of putative members. I didn't tell them what list to produce. They could have listed the entire universe, right? This is a fairly typical kind of a discovery kind of problem, is it not? Right. I mean, you gave them, you propounded the interrogatories. They gave their answer. You presumably looked at it as a careful lawyer, and did you say, you know, I don't think this meets our definition, give him a call, say, look, what do you do, and if you don't get cooperation, then you go back for further orders, right? Yeah, but, Your Honor, they were ordered to produce the class list. So if they gave me a list that didn't include, included other persons, that would have been fine. They produced the list with the 160,000 names in it. After we responded, we hired an investigator, Ms. Bosch, whose declaration was not challenged, and Mr. Lakowicz, who was our statistician Ph.D., who provided an unopposed expert report. And we assumed that was the class list. And based on that, then defendants filed a supplemental brief, which they didn't oppose. And then in their supplemental reply to our brief, they took for the first time the position that the class list that they gave us wasn't really the class list. It doesn't include people that they don't know. And, look, they recorded everybody. So it was up to them to produce the evidence in response. And so they argued it. So in response, I argued to the district court, allow me to have supplemental briefing. We supplied a supplemental declaration found at ER 27 through 37, is Mr. Lakowicz's supplemental declaration, taking into account all their arguments. And the problem with their arguments is it's purely theoretical. The claim that he argued that you can't back out the noncitizens out of Washington is just not statistical methodology that's accepted and taught at the universities. It's just pure speculation on his part. Let me ask you this, and I don't pretend to be Einstein, but as I understand it, of the 185-person random sample that your expert picked out, you obtained residency information for 145 people, 113 of whom had recent residence in California. If 113 of 185 people in the sample are California residents, that's only 61%. It doesn't meet the two-thirds requirement. Now, that comes from your expert, as I understand it. What am I missing? Yes, but it's not you don't take a look. You have to extrapolate from that. So it's important if the court is going to focus on the expert's declaration. I'm a numbers guy. This is a two-thirds requirement. Yes, and for the information I had for the sample, it would show that extrapolated out would be over 82%. What do you mean by that, extrapolated out? So you're not going to, based on the sample, we pulled a, before in his first declaration found at ER 790 through 829, and Mrs. Bosch's declaration, we picked out a random sample of 400. So then he was reducing his sample down, and based on the 400-person sample for the entire period of time, because they argued between the two time periods that essentially that the class period ended on the date the complaint was filed. That was their number one argument, that our sample, our original declaration was over-inclusive because we included people whose first call that was recorded by defendant occurred after the complaint. So we reduced it from the number. We didn't redo the sample because, frankly, we had a limited amount of time. And, you know, CAFA, you know, if you look at 8 in the record, the magistrate's order, 888 through 889, on page 889, it specifically says that I cannot contact any members of the class. What defendant was arguing is, and limited on his statements of issues presented because we simultaneously submitted briefs in this case, I had no idea what they were arguing, but his only issue is whether or not you can use residential addresses alone to prove residency. That was their argument. Their argument was it's irrelevant, which is not consistent with Ninth Circuit authority. It's not consistent with Mondragon or any of the prior cases, the Hollinger case or the later after. Again, what I'm struggling with here, counsel, is you have a definition of the class. Correct. Nobody made you come up with that. They gave you answers. Right. You didn't contest what they gave you. You then had experts, two of them, who made these determinations, and they, for whatever reason, changed the numbers as they looked at it more carefully. I don't know whether it was because of their request or whatever, but the ultimate numbers, if I understand correctly, that were submitted to the court doesn't add up to two-thirds. No, I would disagree, Your Honor. What's wrong? I think you're, yeah, we didn't change the class definition. No, I understand that. What we did, the point that was argued by defendant in their supplemental brief that I got to file a certify was their argument was we added people, we counted people whose first call occurred after what they considered the class period. It was the timing. It was the timing. So we did the calculations two ways. We did it, one, based on the date of removal, which was May 6th, everybody in the list that they gave us. But the problem really goes back to the gap in discovery. When you asked for the list of what you thought you would be getting, a list of the putative class members, and then, in fact, the list turned out to be people with mailing address associated. No, no, but that's their argument, that the only address associated. I asked for a production of the entire list. No, I understand that. There was a gap in the production of discovery between what you asked for and thought you received and what was produced. But you were saying that you didn't find out that there was a gap there until the matter was well litigated. Until after I found out for the first time they raised that argument in their reply brief. Did you think to raise the issue? And I'm not unsympathetic to that, right? You're getting what you thought was the putative class list, and you hired an expert, and you did the calculations based on that, and then, lo and behold, come to find out that it's not really a putative class list because it's really limited by the information that they had in their possession, which is people associated with California and Washington addresses. So I would think one solution at that point would be to say to the district court, whoa, for whatever reason, whether it's purposeful or sandbagging, I'm not given the information that I thought I had all along. So I've come to find out in the reply brief that this was actually nonresponsive. So can I reopen discovery now? Go back to the class definition. Decide for yourself whether you want to reopen discovery and get the universe list, if they have it, or amend the class definition to basically meet what they're now representing to be the scope of their discovery. Sure. And I'd like to answer your question by making two points. I did ask the district court to file a SIR reply brief and allow my expert to file the SIR reply brief at ER 27 to 37. You asked which court? I asked the district court. District court. And he allowed that, and that allowed within the time frames because we had only ---- You filed a supplemental brief. I did. Right. No, I understand that, and that's the record that we have right now. The problem is if we determine that that extrapolation and that math is still a wrong math, then that's where I think you put yourself in the corner there. Well, under the guidelines, that's what I asked was doable. The second position was it's a red herring to say that there could be some other persons located. They know who they called. They have the recordings themselves. This is a case that if I was allowed to do the discovery because the magistrate, I asked to be able to contact the persons on the class list because their argument was you can't look at residential addresses. It's irrelevant, not that it doesn't go to weight of where they're domiciled at. It's completely irrelevant. In this case, because I know who the people are, I could have called and got declarations from everybody, but defendant didn't want that. Defendant didn't want me talking to the people. So if allowed, and this court, if we're going to expand Mondragon on the type of discovery allowed because I clearly put in all the discovery because defendant stonewalled and said I'm not giving you anything, and it took me two independent discovery conferences just to get the order that I got. Counsel, how long a time passed from the date that you initially promulgated your interrogatories until the end of the dispute before you went to litigation? I think within a week's time.  As soon as it was handed down, I would say within five days I propounded all my discovery. So this all went very, very quick, right? Very fast. Just because it's capital. And then what we got was blanket objections, which are in the record. Nothing. So then I had to have calls. And the reason why, and we put in both transcripts with the magistrate, but I needed a ruling because if at the expiration of the 60 days the judge had set a timeline on briefing, these matters aren't, in my opinion, we're not supposed to be in the factual swamp that the Tenth Circuit was talking about. This should be, and that's why I'm advocating that Mondragon, the area that they wanted to establish but they didn't reach because the facts weren't there, in that case should be extended here. Plaintiffs should be allowed to use census data just like defendants did in their supplemental reply, but at a minimum we should allow a rebuttable presumption under Mondragon, under the Catholic exemption standards to use that as evidence. Here there is an unknowable speculative number of people that could have been in California. Our problem, or at least my problem, I'll put it to you quite directly. You asked for that information. No doubt about it. You asked for information for your class, interrogatory number three. And in response to interrogatory number three, this is after they've stonewalled you and after you've had these two conferences and after it's all been on the record, they say responding party will not produce documents or information in response to the request as propounded. Nevertheless, responding party will produce a report from which a party may ascertain information regarding the number of California and Washington accounts serviced by defendants as well as the dates of the first and last telephone calls made to such accounts. Right. So they told you, first sentence, they're not going to give you the information that you've asked for. Well, I think the point that they're talking about people located is a speculative red herring. There aren't those people. They know it's the people in the list they produced. My expert looked at the argument that they made that people could be in the area and he addressed it and discounted it. Since you think it's speculative, do you think if you examined their records you could tell that? Well, I think you could. Well, then, as my colleague suggested to you, you should have asked for this. If the magistrate judge would have allowed me to contact the individuals, we wouldn't have been left with just me hiring an investigator to get the information indirectly. And how long would you have had? And we got voter registration. How long would you have had? I mean, you just have to do it as quickly as you can. But I could have. I could have hired a phone bank and we could have called all the individuals and we could have done a survey. At the end of the day, I think what we're left with, of course, we have to have a response from opposing counsel. I think what we're left with is you propose the class definition, you ask for certain information. At some point, as my colleague has read, you were told you weren't going to get what you thought you were getting. At that point, at that point, apparently you went forward with what you had, and at least by some reckoning you don't have two-thirds requirement. Now, my argument. It's a burden, right? It is, Your Honor. And no, I think my expert declaration shows I have over 82 percent. So I would encourage the court to look at it. And I think the findings of the district court found that. So I think the math is right. And two, I didn't. You're over time. Okay. You've got some really critical, critical thing, life-shaking, earth-shaking kind of thing, or you told us what you need to in your wonderful briefs. I think my briefs. Excellent. Thank you, Your Honor.  Okay. Let's hear from the opposing counsel in rebuttal. I just want to point out to the court that not only did Monterey expressly say what it was going to produce in the discovery response read by the court a moment ago, but it then amended and supplemented that response to be even more specific, and that's on page 14, quoted on page 14 of the appellee's, of Brinkley's brief in this case. Secondly, it's unfair to the court, the lower court, to suggest that it refused to allow the plaintiff to make contact with the class members. And the reason that's unfair is because the court inquired, what do you plan to do with this list? Do you plan to contact them? Because Monterey had concerns about confidentiality of third parties. And the plaintiff's response to the court was, no, we don't need to contact them. And the court said, well, in that case, I don't think we have a problem. You'll give us a list, and you won't contact them. So it's very unfair to suggest that the lower court prevented them. Well, that suggests the district court thought you were giving them the list of the class that they defined. I don't think so. I don't think so. The issue was, well, I don't think that's the case, Your Honor. The court simply wanted to know, because we were concerned about confidentiality of our clients, what he intended to do. The plaintiff's counsel said, we're not going to contact them. And that was volunteered. To our shock, that was volunteered by the plaintiff. The final point I want to make is that the 61% that Judge Smith referred to is exactly what their own expert said. That's all he came up with was 61%. Everything else was a guess. Everything else was speculation. And that 61% did not account for non-U.S. citizenship and did not account for this larger class definition. Thank you, Your Honor. Thank you very much. We appreciate all counsel. The case just argued is submitted.
judges: Motz, M. Smith, Nguyen